UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>OSCAR HUDSPETH, SR.,<br><br>Defendant. | 5:23-CR-50192-CCT<br><br>**ORDER DENYING MOTION FOR ACQUITTAL, DENYING MOTION FOR NEW TRIAL BASED ON SUFFICIENCY OF THE EVIDENCE, AND SETTING HEARING ON MOTION FOR NEW TRIAL BASED ON ALLEGATIONS OF JUROR MISCONDUCT** |

Following a three-day jury trial and conviction on two counts: (1) aggravated sexual abuse of a child, and (2) abusive sexual contact of a child, Defendant Oscar Huspeth, Sr. ("Hudspeth") moves for acquittal, or in the alternative, for a new trial. Docket 82. The government opposes the motion. Docket 88.

**BACKGROUND**

On December 5, 2023, Hudspeth was indicted on one count of aggravated sexual abuse of a child in violation of 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D); and on one count of abusive sexual contact of a child in violation of 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3). Docket 1.

The matter proceeded to jury trial on October 8, 2024. Docket 72. At the close of the government's case on October 9, 2024, Hudspeth moved for judgment of acquittal on both counts; the Court denied the motion. Hudspeth

1

then presented his case to the jury, and the trial concluded on October 10, 2024. *Id.* Hudspeth was found guilty on both charges. Docket 78.

On October 22, 2024, twelve days after the trial ended, Hudspeth timely filed a motion for acquittal or, in the alternative, a motion for a new trial. Docket 82. First, Hudspeth moved for acquittal on both counts arguing that the government failed to prove that he had touched the victim "with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person" as required under 18 U.S.C. §§ 2246(2)(D) and (3). *Id.* at 2. Alternatively, Hudspeth moved for a new trial based on juror misconduct and on his belief that the weight of the evidence presented at trial contradicted the jury's verdict. *Id.* at 2-6.

The government opposes the motion, asserting that the evidence presented at trial was sufficient to prove beyond a reasonable doubt that Hudspeth sexually abused D.J. Docket 88 at 4. The government further asserts that Hudspeth's alternative motion for a new trial should be denied because he has not shown juror misconduct and the weight of the evidence supports the verdict in this case. *Id.* at 9-15.

I. **Evidence Presented at Trial**

During the three-day jury trial, the government presented evidence through six witnesses: D.J., the victim; Peggy Hudspeth, the ex-wife of Hudspeth and mother of D.J.; Miranda O'Donnell, a teacher's aide to whom D.J. reported the abuse; Brandi Tonkel, a child forensic interviewer; Edmond Grant, the FBI case agent that investigated the report of abuse; and Timothy

Wittman, an FBI agent that interviewed Hudspeth after the report of abuse. Docket 72. Hudspeth called three witnesses: himself; Santa Lupe Hudspeth Belt, his sister; and Santa Saralene Hudspeth, his daughter. *Id.*

At trial, D.J. testified that Hudspeth touched her on at least two different occasions while her mother was at work. On both occasions the touching occurred in Hudspeth's bedroom on his bed. On the first occasion, Hudspeth touched her on her skin under her underwear, specifically on her "taco," which she described as her private part.[1] She described that during the touching, Hudspeth lay behind her, moved his hand in a circular motion while he touched her, and was breathing heavily. On the second occasion D.J. testified that Hudspeth lay behind her on the bed and touched her butt and her "taco." While Hudspeth was touching her "taco" on her skin under her underwear D.J. felt something "poking" to her butt. D.J. described sensory details she recalled from both incidents including the sound of Hudspeth's heavy breathing, what Hudspeth's hands felt like while he touched her "taco," and that she smelled cigarettes while the touching occurred. D.J. testified that she was between five and seven years old and lived in Hudspeth's home when these acts of touching occurred.

Miranda O'Donnell testified that after D.J., a fourth grader at the time, had reported the abuse to her at school, she forwarded the report on to the school social worker. Peggy Hudspeth testified that after D.J. told her about the

---

[1] No transcript has been prepared of the jury trial. This summary of the trial evidence is derived from an audio recording and the Court's memory.

3

abuse, she attempted to make a report to law enforcement. Peggy confirmed that D.J. lived in Hudspeth's home between 2016-2019. Brandi Tonkel testified that she conducted a forensic interview of D.J. after the abuse was reported. The United States introduced an interview between Hudspeth and FBI Agent Wittman, wherein Hudspeth admitted that he "probably, maybe, did" touch D.J.'s vagina, underneath her underwear, with his hand two or three times. The parties stipulated to the facts that Hudspeth was an Indian at the time of the alleged abuse, and that the alleged offenses took place in Indian Country.

## II.  Hudspeth's Allegations of Juror Misconduct

Hudspeth claims that his right to a fair trial may have been violated by juror misconduct. Docket 82. In support of that assertion, Hudspeth notes that Juror #17 was asked during voir dire if he knew the Defendant, any of the witnesses, or defense counsel. *Id.* at 3. Juror #17 denied knowing them, even when questioned individually. *Id.* Defense counsel also asked Juror #17 if he taught defense counsel's children Lakota classes. *Id.* Juror #17 stated that he teaches Lakota classes but did not know defense counsel. *Id.*

Hudspeth claims that after trial was over, defense counsel learned that Juror #17 knew witness Santa Lupe Hudspeth Belt, Hudspeth's nephew Daniel Hudspeth III, and Hudspeth, and was familiar with many of the members of Hudspeth's family. *Id.* Defense counsel was provided this information from Carmen Little Iron, the girlfriend of Hudspeth's nephew Daniel Hudspeth III. *Id.* Ms. Little Iron claimed that Juror #17 was a close friend of hers and had been a friend of Daniel's until they had recently had a falling out over a girl that

Juror #17 liked. *Id.* Daniel and Ms. Little Iron had allegedly been to bars with Juror #17, watched Juror #17's house when he was out of town, and would Snapchat each other often. *Id.* Defense counsel provided an exhibit showing a partial Snapchat conversation between Ms. Little Iron and Luke Warmwater, an alleged alias that Juror #17 uses, that allegedly took place the day after the trial concluded. *Id.*; Docket 82-1.

Defense counsel claims that Juror #17 did not acknowledge his extensive relationship with Hudspeth's family and argues that because Local Rule 24.2[2] prohibits contact with jurors following a trial, absent a court order, counsel is without recourse to determine what effect Juror #17 had on the trial. *Id.* at 4; Docket 82-2.

The United States claims there has been no showing of juror misconduct, referencing the partial trial transcript of the jury selection process. Docket 88 at 9 (citing Docket 86). Specifically, the United States argues that Juror #17 did not answer questions during voir dire dishonestly, that Hudspeth has failed to show that Juror #17 was motivated by partiality, and that Hudspeth has failed to establish that the truth, if known, would have supported striking Juror #17 for cause. Docket 88 at 12-15.

The United States notes that Juror #17 disclosed that he recognized the name of one of the government's witnesses (Miranda O'Donnell), Docket 88 at

---

[2] Local Rule 24.2(B) states that "[n]o one may contact any juror before or during the juror's service on a case. The parties, their lawyers and anybody acting on their behalf must seek and obtain permission from the district judge who tried the case before contacting a juror after the juror served on the case." D.S.D. Crim. LR 24.2(B).

5

9-10 (citing Docket 86 at 12-13), and did not indicate knowing any of the potential witness names provided by defense counsel. Docket 88 at 10 (citing Docket 86 at 16). Notably, however, defense counsel did not provide the names of Hudspeth, Daniel Hudspeth III, or "Lupe" as potential witnesses that would testify during the trial. Docket 88 at 12 (citing Docket 86 at 14). Also, while defense counsel specifically questioned Juror #17 to determine if they knew each other, he did not ask Juror #17 other questions. Docket 88 at 11-12 (citing Docket 86 at 91). In fact, the jury panel was never asked specifically about knowing or recognizing Hudspeth, and Juror #17 was never asked about his knowledge or familiarity with Hudspeth or Hudspeth's extended family. Docket 88 at 12 (citing Docket 86 at 91).

## DISCUSSION

### I. Judgment of Acquittal

#### a. Legal Standard

"A defendant may move for a judgment of acquittal . . . within 14 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. P. 29(c)(1). "If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." *Id.* at 29(c)(2).

"Under Federal Rule of Criminal Procedure 29, a district court shall enter a judgment of acquittal if the evidence presented at trial is insufficient to sustain a conviction. A district court must consider a motion for judgment of acquittal with 'very limited latitude' and must neither assess the witnesses' credibility nor weigh the evidence." *United States v. Johnson*, 474 F.3d 1044,

6

1048 (8th Cir. 2007) (quoting *United States v. Thompson,* 285 F.3d 731, 733 (8th Cir. 2002)). "Rather, the district court must view the evidence in the light most favorable to the government, resolving evidentiary conflicts in the government's favor and accepting all reasonable inferences drawn from the evidence supporting the jury's verdict." *Id.* "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable-minded jury to conclude guilt beyond a reasonable doubt." *Id.* (quoting *Thompson,* 285 F.3d at 733). "The district court's discretion to grant an acquittal is even more limited than its discretion to grant a new trial." *United States v. Magallon,* 984 F.3d 1263, 1288 (8th Cir. 2021) (citing *United States v. Robbins*, 21 F.3d 297, 298–99 (8th Cir. 1994)).

### b. Hudspeth's Judgment of Acquittal on Both Counts is Denied

To convict Hudspeth under 18 U.S.C. §§ 1153, 2241(c), and 2246(2)(D) for aggravated sexual abuse of a minor, the United States was required to prove beyond a reasonable doubt that Hudspeth "(1) knowingly engaged in a sexual act with a person who has not attained the age of 12, (2) is an Indian, and (3) the offense occurred in Indian Country." *United States v. DeCoteau*, 630 F.3d 1091, 1093 n.2 (8th Cir. 2011). The statute defines "sexual act" to include "the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(2)(D).

To convict Hudspeth under 18 U.S.C. §§ 1153, 2244(a)(5), and 2246(3) for abusive sexual contact of a child, the United States was required to prove beyond a reasonable doubt that Hudspeth "(1) knowingly and intentionally engaged in sexual contact with a person under the age of 12; (2) intended to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; (3) is an Indian; and (4) committed the act in Indian country." *United States v. Hollow Horn*, 523 F.3d 882, 890 (8th Cir. 2008) (citations omitted).

The statute defines "sexual contact" to include "the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. § 2246(3).

Hudspeth focuses his argument on the first element for each of these charges,[3] claiming that the United States did not establish Hudspeth's intent in touching D.J. Docket 82 at 2. However, the United States offered D.J.'s testimony that Hudspeth touched her on at least two occasions in his bedroom while her mother was at work. She testified that he touched her on her skin under her underwear, specifically on her "taco," which she described as her private part. She testified that during the touching Hudspeth lay behind her,

---

[3] Hudspeth does not present any argument regarding D.J.'s age at the time of the offenses, so the age element on both counts is not in dispute. The other elements are likewise not in dispute because the parties stipulated to the facts that Hudspeth was an Indian at the time of the alleged abuse and that the alleged offenses took place in Indian Country.

moved his hand in a circular motion, and was breathing heavily. On one occasion, D.J. felt something "poking" to her butt when Hudspeth was touching her "taco." D.J. also provided sensory details about what she heard, felt, and smelled while the touching occurred.

      D.J.'s testimony provides sufficient facts for the jury to find beyond a reasonable doubt that Hudspeth did intentionally engage in the sexual acts of touching D.J.'s genitalia beneath her clothing and touching her butt. *See United States v. Seymour,* 468 F.3d 378, 388 (6th Cir. 2006) (concluding that the jury could find beyond a reasonable doubt that the defendant penetrated the victim's genital opening based on the victim's testimony describing the defendant's conduct). The Court further notes that a victim's testimony alone can be sufficient to prove aggravated sexual abuse. *United States v. Kirkie,* 261 F.3d 761, 768 (8th Cir. 2001) (rejecting the defendant's argument that inconsistencies in the victim's testimony, which goes to credibility, support granting a judgment of acquittal); *United States v. Wright,* 119 F.3d 630, 634 (8th Cir. 1997) (finding that testimony of child abuse victim could be credited by jury and constitutes sufficient evidence for conviction). Further, the interview between Hudspeth and FBI Agent Wittman was introduced wherein Hudspeth admitted that he "probably, maybe, did" touch D.J.'s vagina, underneath her underwear, with his hand two or three times.

      A reasonable jury viewing the evidence could find beyond a reasonable doubt that on more than one occasion while Hudspeth lay behind D.J. he touched her genitalia (her "taco"), under her underwear, in a circular motion,

9

while Hudspeth breathed heavily. During one of the incidents of this touching, D.J. felt a poking sensation on her buttocks. The jury could further find beyond a reasonable doubt based on this evidence that Hudspeth touched D.J.'s genitalia and buttocks with the intent to arouse or gratify his sexual desire. Viewing the evidence in the light most favorable to the verdict, the Court concludes that there is sufficient evidence to prove aggravated sexual abuse and abusive sexual contact of D.J. by Hudspeth as alleged in the indictment.

## II. Motion for New Trial

### a. Legal Standard

Federal Rule of Criminal Procedure 33(a) grants the district court authority to vacate a judgment and grant a new trial in the interest of justice and only upon a defendant's post-trial motion. Fed. R. Crim. P. 33(a). "The decision to grant or deny a motion for new trial based upon the weight of the evidence is within the sound discretion of the trial court." *United States v. Campos,* 306 F.3d 577, 579 (8th Cir. 2002). The court's discretion is both broad and limited. *Id.* It is broad to the extent the court "can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict[.]" *Id.* (citation omitted). Additionally, "the court need not view the evidence most favorably to the verdict[.]" *United States v. Worman,* 622 F.3d 969, 977 (8th Cir. 2010); *see also United States v. Lacey,* 219 F.3d 779, 783–84 (8th Cir. 2000) (In determining whether to grant a Rule 33 motion, "the court need not view the evidence in the

light most favorable to the government, but may instead weigh the evidence and evaluate for itself the credibility of the witnesses.").

The court's discretion is limited to the extent the court must allow the jury's verdict to stand unless it determines a miscarriage of justice will occur. *Campos,* 306 F.3d at 579; *see also United States v. McCraney,* 612 F.3d 1057, 1064 (8th Cir. 2010) ("Where a defendant moves for a new trial on the grounds that the verdict is contrary to the weight of the evidence, the district court should grant the motion if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." (citation omitted)); *Worman,* 622 F.3d at 978 ("A district court will upset a jury's finding only if it ultimately determines that a miscarriage of justice will occur."); *United States v. Camacho,* 555 F.3d 695, 705 (8th Cir. 2009) ("[A] new trial motion based on insufficiency of the evidence is to be granted only if the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice."). Because a motion for new trial based on the weight of the evidence is "generally disfavored[,]" the district court should use its authority to grant a Rule 33 motion "sparingly and with caution." *Campos,* 306 F.3d at 579 (citations omitted).

Where a defendant moves for a new trial on a claim of concealed juror bias, "a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's

11

impartiality can truly be said to affect the fairness of a trial." *United States v. Tucker*, 137 F.3d 1016, 1026 (8th Cir. 1998) (quoting *McDonough Power Equipment, Inc. v. Greenwood*, 464 U.S. 548, 556 (1984)).

### b. Defendant's Motion for New Trial Based on Sufficiency of the Evidence is Denied

Based on the same reasoning noted above, the Court finds that Hudspeth is not entitled to a new trial on either count of the indictment based on his sufficiency of the evidence argument. The Court does not find that "the weight of the evidence is heavy enough in favor of acquittal that a guilty verdict may have been a miscarriage of justice." *United States v. Villarreal*, No. CR 10-50082-JLV, 2012 WL 683356, at *13 (D.S.D. Mar. 2, 2012) (quoting *Camacho*, 555 F.3d at 705), *aff'd*, 707 F.3d 942 (8th Cir. 2013). In making this determination, the Court "weighed the evidence and assessed the credibility of the witnesses." *Id.* (citing *United States v. Lacey,* 219 F.3d 779, 783–84 (8th Cir. 2000). Specifically, the court finds D.J.'s testimony reasonably consistent and credible with respect to her reports of abuse and sexual contact by Hudspeth. D.J.'s testimony at trial was consistent with the reports she made to Miranda O'Donnell at school, and to her mother, Peggy Hudspeth. The Court also finds that Hudspeth's testimony at trial was not consistent with some of the admissions he had made to FBI Agent Wittman, where he admitted that he may have done some touching as D.J. described.

### c. An Evidentiary Hearing Shall be Set on Defendant's Motion for New Trial Based on Allegations of Juror Misconduct

"The district court has broad discretion in handling allegations that jurors have not answered voir dire questions honestly." *Tucker*, 137 F.3d at 1026–27. *See United States v. Williams,* 77 F.3d 1098, 1100 (8th Cir. 1996), *cert. denied,* 519 U.S. 967 (1996). "That discretion is not unlimited, however, and a movant who makes a sufficient showing of *McDonough*-type irregularities is entitled to the court's help in getting to the bottom of the matter." *Tucker*, 137 F.3d at 1026; *see also United States v. St. Clair,* 855 F.2d 518, 523 (8th Cir. 1988) (where the Eighth Circuit reversed and ordered a new trial after district court failed to permit defendant to question a juror after trial when it was discovered that the juror had not responded to a voir dire question accurately). *See also United States v. Boney,* 68 F.3d 497, 502–03 (D.C. Cir. 1995) (party with *McDonough* claim entitled to cross-examine juror as the limited inquiry permitted by district court "virtually assured that the hearing would fail to discover any possible prejudice").

Here, information defense counsel received post-trial has raised questions about Juror #17's knowledge of and relationship with Hudspeth's extended family. During voir dire, Juror #17 did not indicate he knew Hudspeth, and thus, no colloquy occurred regarding whether there was any reason he would not be able to serve as a fair and impartial juror on the case in light of his knowledge. The parties should be allowed to question Juror #17 under oath as to his reasons for holding back this potentially pertinent

13

information and about his ability to reach a guilty verdict without relying on his specialized knowledge. *See St. Clair*, 855 F.2d at 523.

Thus, it is ORDERED that

1. Hudspeth's motion for acquittal is denied;
2. Hudspeth's motion for new trial based on the sufficiency of the evidence is denied; and
3. An evidentiary hearing shall be set on Hudspeth's motion for new trial based on allegations of juror misconduct. The parties are directed to contact chambers to schedule the hearing.

Dated December 20, 2024.

                        BY THE COURT:

                        /s/ *Camela C. Theeler*
                        CAMELA C. THEELER
                        UNITED STATES DISTRICT JUDGE